NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

NO. 28839

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

REDEMPTION BIBLE COLLEGE, Plaintiff-Appellant

and

HIS HIGHEST PRAISE PENTECOSTAL HOLINESS CHURCHES, INC.,
a dissolved Hawai'i non-profit corporation;
and PHILLIP ELLSWORTH, PAMELA YUEN and
CHRISTOPHER YUEN, in their capacity as Trustees,
Plaintiffs-Appellees,

vs.

THE INTERNATIONAL PENTECOSTAL HOLINESS CHURCH,
an Oklahoma Corporation; and RONALD W. CARPENTER, SR.,
Defendants-Appellees,

and

JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10;
DOE PARTNERSHIPS 1-10; DOE LIMITED LIABILITY PARTNERSHIPS 1-10;
DOE LIMITED LIABILITY COMPANIES; and
DOE UNICORPORATED ENTITIES 1-10,
Defendants.

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 07-1-0825)

SUMMARY DISPOSITION ORDER
(By: Nakamura, Chief Judge, Foley, and Fujise, JJ.)

Plaintiff-Appellant Redemption Bible College (RBC) appeals from the October 11, 2007, "Judgment for Possession as to 349/355 N. Kainalu, Kailua" (Judgment for Possession) filed in the Circuit Court of the First Circuit (circuit court)[1] in favor of Defendant-Appellee The International Pentecostal Holiness Church (IPHC). The circuit court issued the Judgment for Possession pursuant to its concurrently filed "Order Granting

---

[1] The Honorable Judge Victoria S. Marks presided.

[IPHC's] Motion for Partial Summary Judgment Filed August 13, 2007" (Partial Summary Judgment Order) and certified the Judgment for Possession pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 54(b) (2000).

This case involves a dispute over whether RBC would be permitted to continue operating a school on property held in the name of IPHC. RBC contends that oral assurances given in 1978 by an IPHC official to Adrian Yuen, who became and at all times relevant to this case was the President of RBC, that a school could be operated on IPHC's property for as long as the school desired, constituted a lease that entitled RBC to maintain its school on the property. IPHC contends that the oral assurances given in 1978 constituted a license to use the property that was terminated through notice of termination provided in February 2007.

On May 8, 2007, RBC and Plaintiffs His Highest Praise Pentecostal Holiness Churches, Inc., a dissolved Hawai'i non-profit corporation, and Phillip Ellsworth, Pamala Yuen, and Christoper Yuen, in their capacities as Trustees, (collectively, Plaintiffs) filed a complaint against IPHC and Roland W. Carpenter, Sr., (collectively, Defendants) for fraud and misrepresentation, damages to RBC, injunctive relief, a declaratory judgment, and punitive damages. The complaint involved two parcels of property, one located at 349/355 N. Kainalu Drive (349/355 Property) and the other located at 361 N. Kainalu Drive (361 Property). Defendants answered the complaint and IPHC asserted a counterclaim against Plaintiffs for ejectment, declaratory relief, breach of fiduciary duties, and trespass to realty.

On August 13, 2007, IPHC moved for partial summary judgment, seeking an order granting summary judgment on its ejectment counterclaim for possession in favor of IPHC and against RBC as to the 349/355 Property (Partial Summary Judgment Motion). On October 11, 2007, the circuit court issued its Partial Summary Judgment Order. The circuit court determined

2

that "[t]he unwritten understanding between IPHC and RBC, which had permitted RBC to occupy [the 349/355 Property], was a license and not a lease." The circuit court granted IPHC's Motion for Partial Summary Judgment as to all claims related to the 349/355 Property, and it ruled that IPHC was entitled to recover possession of, and to a writ of possession for, the 349/355 Property effective as of January 1, 2008. The circuit court stated that its Partial Summary Judgment Order resolved the second claim in RBC's complaint, which sought damages for IPHC's interference with RBC's enjoyment under its alleged "oral lease" for the 349/355 Property and damage to RBC's business, and Count II of IPHC's counterclaim, which sought a declaration that there is no valid lease between IPHC and RBC. The circuit court ruled that "[t]he other claims and counterclaims, to the extent not inconsistent with this order, remain pending."

I.

On appeal, RBC asserts that the circuit court erred in granting IPHC's Partial Summary Judgment Motion and in issuing its Judgment for Possession as to the 349/355 Property. RBC argues that:

1.  The verbal agreement between IPHC and RBC[2] was enforceable despite the Statute of Frauds, Hawaii Revised Statutes (HRS) § 656-1 (1993), because a) the agreement could have been performed within one year; b) the agreement was partly performed; and c) equitable estoppel applied.

2.  The failure to record the oral "lease" on the transfer certificates of title for the 349/355 Property did not violate HRS § 501-121 (2006) because the "lease" could have terminated in less than one year.

3.  The verbal agreement between IPHC and RBC was a lease, not a license.

---

[2] In its opening brief, RBC refers to the "verbal agreement between IPHC and The Good Shepard School, now known as [RBC] dba Redemption Academy."

4.    IPHC could not unilaterally terminate the agreement between IPHC and RBC.

5.    There were genuine issues of material fact that precluded summary judgment.

6.    IPHC was not entitled to a Judgment of Possession.

We conclude that the dispositive issue in this appeal is whether the oral understanding between IPHC and RBC[3] was a license or a lease.  Because we agree with the circuit court that the oral understanding was a license and not a lease, we affirm the Judgment for Possession and the Partial Summary Judgment Order.

II.

When viewed in the light most favorable to RBC, the pertinent facts are as follows.

IPHC acquired title to the 349/355 Property in 1968. In 1977, Leon Stewart (Stewart), who was then the Director of Evangelism and Assistant Superintendent of IPHC, recruited Adrian Yuen to be a pastor for The Good Shepherd Pentecostal Holiness Church and to establish and operate a Christian school on IPHC's property.  At that time, IPHC had title to the 349/355 Property and had agreed to purchase the 361 Property by way of an agreement of sale.  However, the 361 Property was being leased to Hawaii Care Center.  Thus, in 1978, when Adrian Yuen became the Senior Pastor for The Good Shepard Pentecostal Holiness Church, only the 349/355 Property was available for the proposed school.

The interim pastor, James Valentin (Valentin), informed Adrian Yuen that The Good Shepard Pentecostal Holiness Church did not have money to fund the school and that Adrian Yuen would have to find funding elsewhere.  Valentin and Stewart assured Adrian Yuen that the school could remain on the 349/355 Property for as long as the school wanted to be there.  Adrian Yuen began

---

[3] As discussed infra, the oral understanding was between Leon Stewart, a representative of IPHC, and Adrian Yuen, who later became the President of RBC.  For purposes of simplicity, we will at times refer to the oral understanding as being between IPHC and RBC.

developing plans for a school, and he discussed his plans with A. Joel Criz (Criz), a realtor and member of The Good Shepard Pentecostal Holiness Church, who expressed interest in providing funds for construction of the school.

Stewart assured Adrian Yuen and Criz that the school would be permitted to operate on the 349/355 Property and on the 361 Property, when the 361 Property became available, until the school chose to cease using the premises. In return, Criz donated funds and oversaw the construction of a school on the 349/355 Property at a cost of over $200,000. The school, which was named The Good Shepherd School, began operations in 1978. Before the school was built, there was already a church sanctuary building, a church office, and a parsonage on the 349/355 Property. The school did not have exclusive use of the 349/355 Property, but shared the property with the IPHC's The Good Shepard Pentecostal Holiness Church, which used the sanctuary for Sunday service.

In 1983, the school changed its name to Redemption Academy, and Adrian Yuen established RBC to operate the school. Prior to the lawsuit underlying this case, RBC and The Good Shepard School did not pay any rent to IPHC for the use of the 349/355 Property. In about July 2005, Adrian Yuen withdrew from the IPHC denomination. Thereafter, IPHC and RBC attempted to negotiate a written lease, but were unable to reach an agreement. Effective February 28, 2007, IPHC terminated its oral agreement with RBC.

The 349/355 Property is covered by two Land Court Certificates of Title. Both certificates show title in IPHC and no interest in RBC.

III.

A.

"We review the circuit court's grant or denial of summary judgment de novo." Querubin v. Thronas, 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005) (internal quotation marks omitted).

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

Id. (internal quotation marks and brackets omitted).

B.

RBC argues that the circuit court erred in concluding that the oral understanding between IPHC and RBC was merely a license, and not a lease. We disagree.

In Kiehm v. Adams, 109 Hawaiʻi 296, 126 P.3d 339 (2005), the Hawaiʻi Supreme Court identified three key factors for determining whether an agreement is a license or a lease:

> (1) Most importantly, does the grantee have the right to occupy a distinct and separate part of the premises (i.e., a definite parcel)? Bush [v. Watson], 81 Hawaiʻi [474,] 486, 918 P.2d [1130,] 1142 [(1996)] (citing 49 Am.Jur.2d Landlord and Tenant § 1161); Kapiolani [Park Preservation Society v. City and County of Honolulu], 69 Haw. [569,] 579, 751 P.2d [1022,] 1029 [(1988)]; see also 49 Am.Jur.2d Landlord and Tenant § 21 ("Exclusive possession of the leased premises is essential to the character of a lease . . . . There must be a conveyance of a definite space in order for a lease, rather, than a license, to exist; both the extension and the location of the space within the lessor's premises must be specified."); Harkins v. Win Corp., 771 A.2d 1025, 1027 (D.C. 2001) (essential distinction between roomers and tenants is whether the occupant has exclusive possession or control of the premises);
>
> (2) Is the grantee's right to possession assignable (suggesting a lease) or is it a personal privilege (suggesting a license)? Kapiolani, 69 Haw. at 579, 751 P.2d at 1029; see also 49 Am.Jur.2d § 21 (same); and
>
> (3) Is the agreement for a fixed term (suggesting a lease)? Kapiolani, 69 Haw. at 579, 751 P.2d at 1029; see also McCandless v. John Ii Estate, 11 Haw. 777, 788-89 (1899) (same); 49 Am.Jur.2d § 21 (same).

Id. at 303, 126 P.3d at 346.

Applying these factors, we conclude that under the circumstances of this case, the oral understanding between IPHC and RBC, as a matter of law, was a license and not a lease.

First, the record shows that RBC did not have exclusive possession of the 349/355 Property. Adrian Yuen admitted in his declaration that the church sanctuary building, the church office, and a parsonage were already on the 349/355 Property in 1978, when Adrian Yuen became the Senior Pastor of the Good Shepard Church. He further acknowledged that The Good Shepard Pentecostal Holiness Church used the sanctuary on the 349/355 Property for Sunday service. Thus, the first factor supports the conclusion that RBC only had a license to use the 349/355 Property.

> [A] licensor does not cede exclusive possession or transfer her interest, but instead shares possession. See American Jewish Theater v. Roundabout Theatre Co., Inc., 203 A.D.2d 155, 610 N.Y.S.2d 256, 257 (1st Dept.1994) ("The nature of the transfer of absolute control and possession is what differentiates a lease from a license or any other arrangement dealing with property rights."); Roberts v. Lynn Ice Co., 187 Mass. 402, 73 N.E. 523, 524 (1905) (question of whether an agreement concerning use of real property is a lease or a license depends on whether the agreement cedes exclusive possession from one party to the other). See generally 49 Am.Jur.2d § 21 (discussing distinction between lease and license).

Id. at 303 n.18, 126 P.3d at 346 n.18.

Second, RBC has no basis to claim that it had a right to possession of the 349/355 Property that was assignable. There was no written agreement and thus no written assignment clause. In addition, RBC does not allege that any oral assurances Adrian Yuen received from Stewart regarding the use of the 349/355 Property included a promise that Adrian Yuen could assign any right regarding the use of the property to another. Contrary to RBC's claim, the fact that IPHC allowed RBC to continue to operate the school on the 349/355 Property after the school changed its name and RBC was incorporated does not show that the oral understanding created a right to possession that was assignable. Instead, IPHC's allowing RBC to continue operating the school on the 349/355 Property is fully consistent with the conclusion that the original oral understanding established a permissive license to use the property that IPHC chose to extend to RBC.

Third, RBC concedes that no fixed term was established in the oral understanding. See Francone v. McClay, 41 Haw. 72, 78 (1955) (describing the essential elements for an enforceable lease as "definite agreement as to the name of the parties to the lease, the extent and bounds of the property leased, a definite and agreed term, a definite and agreed price or rental, and the time and manner of payment").

The 1978 oral understanding between Stewart and Adrian Yuen only created a license to use the 349/355 Property. This license was subject to termination or revocation by IPHC. See Kiehm, 109 Hawai'i at 304, 126 P.3d at 347. There is no dispute that in February of 2007, IPHC gave RBC written notice that RBC's authorization to use the 349/355 Property was terminated. IPHC thus terminated RBC's license to use the 349/355 Property. We conclude that the circuit court was correct in granting IPHC's Partial Summary Judgment Motion as to all claims related to the 349/355 Property and in issuing the Judgment for Possession.

C.

Our determination that RBC only had a license to use the 349/355 Property that was terminated by IPHC renders it unnecessary for us to address the remaining arguments raised by RBC in this appeal.

IV.

For the foregoing reasons, we affirm the circuit court's Judgment for Possession and its Partial Summary Judgment Order, which were both filed on October 11, 2007.

DATED: Honolulu, Hawai'i, April 28, 2010.

On the briefs:

Burt L. Snyder
for Plaintiff-Appellant

Philip J. Leas
Taya R. Naruse
Marion L. Reyes-Burke
for Defendant-Appellee

Craig H. Nakamura
Chief Judge

Associate Judge

Associate Judge

8